## SUNDOWNER MANUFACTURING COMPANY, Appellant,

v.

## Paul KINMAN, Appellee.

No. 8335.

Court of Civil Appeals of Texas, Texarkana.

April 27, 1976.

Robert M. Parker, Nichols & Parker, Longview, for appellant.

Terry Bailey, Carthage, for appellee.

CHADICK, Chief Justice.

This appeal is from an order overruling a plea of privilege. The judgment of the trial court is reversed and the case remanded.

Suit was instituted in Panola County, Texas, by Paul Kinman, a resident of Panola County, Texas, against Sundowner Manufacturing Company, a resident of Gregg County, Texas, and Lewis and Woods Rolling Estates, Inc., a resident of Panola County, Texas. Mr. Kinman grounded his action on several acts and omissions of common law negligence, breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose, breach of an implied warranty of habitability, and breach of an express warranty by promise. Sundowner Manufacturing Company interposed its plea of privilege to be sued in Gregg, the County of its residence.

Appellee Kinman and his wife accompanied Leon Lewis of Lewis and Woods Rolling Estates, Inc. to Sundowner Manufacturing Company's display lot in Longview, Gregg County, Texas, and there Sundowner's representative showed them the mobile home, hereafter called house, that Kinman eventually purchased. Sundowner's representatives pointed out the good qualities of the house and Kinman had opportunity to and did make an inspection. The house was

not connected to a gas line at that time. The house had a gas line system built in to supply gas demands of a hot water heater, furnace, stove, and oven. The gas lines were not visible except where an end projected from underneath the house for connection with an outside gas source. At one point in his testimony, Kinman said gas lines were in the walls but on cross-examination admitted that he did not know where the lines were located, except for the outside projection. He described the house in this manner:

> "Well, it was 14 by 80, Sunvilla, a three bedroom, two on one end and full bath on that end. Then living room, kitchen, a master bedroom and another full bath."

After inspection of the house at Longview Mr. Lewis and his party returned to Panola County. The following day, October 28, 1974, Mr. Kinman purchased a house from Lewis and Woods Rolling Estates, Inc. in a cash transaction paying $13,300.00 for it. The seller agreed to deliver the house to a site in Panola County designated by Mr. Kinman. Delivery was not immediate as Mr. Kinman made substantial site preparation, including a concrete foundation and installation of an 800 ft. gas line connecting the site with a commercial gas company's nearby trunk line. This segment of line was tested by the company and found safe.

The date the house was delivered to the site is not shown. On December 13, 1974, slightly more than six weeks after purchase, Mr. Kinman connected the house's gas system to the commercial source of supply. After making the connection he went inside the house and lit the pilot lights and burners on the several gas appliances, then turned the burners off. He did not smell gas during the ten to twenty minutes he was in the house although the gas was treated with chemical to make it detectable by smell. He was outside the house five to ten minutes performing other work when an explosion occurred that destroyed the house. He testified that the house was in the same condition immediately before the explosion as when he first saw and inspected it at Sundowner's display lot in Long-

view. He acknowledged that he was not an expert on construction of mobile homes and was not able to say in what respect the gas system was defective.

■ Appellee's brief states that its "focus" and "primary emphasis" is on the law of products liability and to sustain venue in Panola County appellee invokes here as in the court below, Tex.Rev.Civ.Stat.Ann. art. 1995, subdivisions 4, 23, 29, 30 and 31 as well as provisions of Tex.Bus. & Comm. Code Ann. Sec.'s 2.313, 2.314, 2.315, 17.50, 17.51 and 17.56. Negligence aside, from the standpoint of products liability law Mr. Kinman was obligated by the nature of his pleadings to prove, by preponderance of the evidence, that a defect existed in the house that caused the damage claimed at the time it left the control of the manufacturer. *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967); *Technical Chemical Company v. Jacobs,* 480 S.W.2d 602 (Tex. 1972); *Jack Roach—Bissonnet, Inc. v. Puskar,* 417 S.W.2d 262 (Tex.1967).

■ The preceding factual recitals make it apparent that a defect was not directly proven. However, defects may be proven by circumstantial evidence. *Darryl v. Ford Motor Company,* 440 S.W.2d 630 (Tex.1969); *Pittsburg Coca-Cola Bottling Works of Pittsburg v. Ponder,* 443 S.W.2d 546 (Tex. 1969); *Melody Home Manufacturing Company v. Morrison,* 468 S.W.2d 505 (Tex.Civ. App., *Houston,* 1st Dist. 1971, no writ). From the evidence in the record the trial judge might reasonably infer that the house exploded and burned as a result of leakage of gas trapped inside. It would also be reasonable to conclude that a properly operating natural gas system would not have leaked gas. It may be assumed in this instance that the house and its gas system is of a nature that would require the application of rules applied in exploding bottle cases. *Pittsburg Coca-Cola Bottling Works of Pittsburg v. Ponder,* supra, *Darryl v. Ford Motor Company,* supra. The applicable rule would require Kinman to negative the probability of an intermediate actor or agency causing the injury. Mr. Kinman testified that the house, which includes its

gas system, was in the same condition when the explosion occurred as when he inspected it at the manufacturer's plant before purchase. Such testimony tended to satisfy the rule and to show a defect existed at the time the house left the hands of the manufacturer. However, Mr. Kinman's acknowledged unfamiliarity with the house's gas system weakens and virtually deprives this generalization on the condition of the house of any real probative value.

The record shows the house was sold more than six weeks before the explosion occurred. It is silent as to where the house was stored in the interim. There is no evidence concerning access to it and care that was taken with it. Under the circumstances, the testimony of a man who acknowledged that he was unfamiliar with the gas system, is factually insufficient to support a conclusion that there was a defect in the gas system at the time it was sold or left the manufacturer's control. Though the focus and emphasis is upon the law of products liability examination of the record reveals that the evidence is insufficient to establish any negligent act or omission relevant to this appeal. Appellant's point of error No. 10 is sustained and the case is reversed to allow fuller development of the facts.